UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
WILFRED SUOZZO,                     )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )   Civil Action No.: 10-11635
MASSACHUSETTS PORT AUTHORITY,       )
HERBY DUVERNE, and                  )
EDWARD FRENI,                       )
        Defendants.                 )
_____)

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

Plaintiff Wilfred Suozzo brings this action against his former employer, Massachusetts Port Authority, and individually against Massport's Director of Aviation Security, Edward Freni, and Deputy Director of Aviation Security, Herby Duverne, collectively referred to as "Defendants," for discrimination based on age, retaliation for engaging in protected activity, interference, and aiding and abetting with protected rights in violation of state and federal law.

**PARTIES**

1. Plaintiff Wilfred Suozzo ("Suozzo") resides in Peabody, Essex County, Massachusetts. Suozzo is and was at all times relevant over the age of forty (40). His date of birth is [REDACTED].

2. Defendant Massachusetts Port Authority ("Massport") is a public authority which operates and manages airports, the seaport (Port of Boston), and transportation infrastructure in the Commonwealth of Massachusetts. Massport has a principal place of business located in East

1

Boston, Suffolk County, Massachusetts.  At all times relevant, Massport was Suozzo's employer, and Suozzo worked at Massport's East Boston location on Logan Airport's premises.

3. From approximately February, 2006 and continuing, Defendant Herby Duverne ("Duverne") held the position of Deputy Director of Aviation Security at Massport and was Suozzo's immediate supervisor.  On information and belief, Duverne resides in Woburn, Middlesex County, Massachusetts.

4. From approximately January, 2007 and continuing, Defendant Edward Freni ("Freni") held the position of Director of Aviation Security at Massport.  At all times relevant, Freni was Duverne's immediate supervisor and Suozzo's second level supervisor.  On information and belief, Freni resides in Reading, Middlesex County, Massachusetts.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Suozzo's claims arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

6. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

7. Personal jurisdiction and venue are pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because the Defendants are residents of, have an agent or agents, and/or transact their affairs in this District and the unlawful conduct complained of occurred in this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. Suozzo properly exhausted his administrative remedies as required pursuant to 29 U.S.C. §§ 626(d) and 633, and M.G.L. c. 151B.

9. Suozzo filed a Charge of Discrimination ("Charge") with the Massachusetts Commission Against Discrimination ("MCAD") on or about July 24, 2008, dually filed with the Equal Employment Opportunity Commission ("EEOC"), alleging the same discrimination and retaliation in violation of the ADEA and M.G.L. c. 151B which is the subject of this Complaint. On or about May 27, 2009, Suozzo filed a second Charge at the MCAD, dually filed with the EEOC, alleging further retaliation which is also the subject of this Complaint.

10. More than ninety (90) days after filing his Charges of discrimination and retaliation, Suozzo noticed the MCAD of the removal of his claims to file a private right of action in Court.

11. The MCAD thereafter dismissed Suozzo's Charges without any determination to pursue his claims in Court.

12. The EEOC issued Suozzo his Dismissal and Notice of Rights on September 8, 2010.

**FACTS**

13. Suozzo began his employment at Massport in April, 1974. While Suozzo held various positions throughout his employment, from approximately 2001 and continuing until July 31, 2008, Suozzo held the position of Airport Security Compliance Manager (the title was changed on various occasions throughout the years).

14. From his hire through February, 2006, Suozzo greatly enjoyed his job.

15. Suozzo performed more than adequately in his job as is evidenced by his receiving performance evaluations every year from his hire in 1974 through 2006 indicating that he met or exceeded his job duties and performance requirements.

16. In addition, Suozzo received merit based and other pay increases in every year of his employment from 1974 through 2006 that such pay raises were made available by Massport.

17. In February, 2006, Duverne was hired by Massport as the Deputy Director of Aviation Security and became Suozzo's immediate supervisor.

18. Within months of Duverne's hire, he began to make age based comments to Suozzo and in front of his coworkers, such as that Suozzo "is the oldest guy around" and that as a result his salary was too high.

19. Suozzo reported Duverne's age based comments to the then-Director of Human Resources, Marie Bowen. Suozzo also discussed Duverne's statements with State Police Troop F Major Scott Pare ("Pare"). Suozzo further made efforts to address the matter with his second level supervisor, Freni, but his efforts were rebuffed.

20. Major Pare addressed the derogatory statements with Duverne directly and instructed him to cease his harassment of Suozzo. After learning that Pare did so, Suozzo requested that Bowen hold off on also addressing his complaint with Duverne until it could be determined whether Duverne ceased his ageist comments.

21. In January, 2007, Suozzo received an unfounded poor performance evaluation from Duverne. This was Suozzo's first performance evaluation authored by Duverne and was his first performance evaluation that was not meets or exceeds expectations since 1974 – in thirty-three (33) years of employment at Massport.

22.     Duverne was fully aware that he unjustifiably downgraded Suozzo's performance based upon purported incidents that Duverne knew were inaccurate.  For example, Duverne berated Suozzo's performance for failing to obtain for Duverne a Transportation Security Administration ("TSA") Security Directive, identified as SD1546-06-04A.  Duverne knew full well that Suozzo in fact sought to obtain said Security Directive and that the TSA informed Suozzo it was restricted and would not be released to Massport.  Notwithstanding, Duverne used this instance as an example of poor performance.

23.     When Duverne met with Suozzo about the unfounded review, Suozzo raised the multitude of inaccuracies in the review.  Duverne rebuffed Suozzo and became angry.  He repeatedly made age based comments to Suozzo that he was "past his prime" and thereby could not "keep up with the job."

24.     Massport human resources representative Caryn Harding ("Harding") was also present at this meeting.

25.     Suozzo met with Harding the next day.  During the meeting, Harding repeated Duverne's comments.  When Suozzo pointed out to Harding that she was repeating age based comments, she fell silent.

26.     Thereafter, in or around February, 2007, Suozzo reported the unfounded performance evaluation, the inaccuracies contained in it, and Duverne's and Harding's ageist statements to the new Director of Human Resources, David Gambone ("Gambone").

27.     Gambone was hired as Massport's Director of Human Resources in or around January, 2007.

28. Gambone was visibly concerned and informed Suozzo that Massport would not tolerate such conduct by its employees.

29. Suozzo also attempted to report Duverne's conduct to Freni. Freni responded that he did not want to hear any complaints and that he expected Suozzo to just deal with his situation.

30. Just one month later, in March, 2007, Duverne issued Suozzo an unfounded written warning and placed him on an unfounded performance improvement plan ("PIP") that included a ninety (90) day probationary period.

31. During Duverne's meeting with Suozzo about the warning and PIP, Duverne told Suozzo that he intended to take whatever steps were necessary to ensure that Suozzo failed in the performance of the PIP so that Duverne could purport a reason to terminate Suozzo, regardless of his actual performance.

32. In April, 2007, Suozzo again met with Gambone. Suozzo reported Duverne's issuance of an unfounded written warning, placement on an unfounded PIP, and his stated intention to sabotage Suozzo's employment. Suozzo made clear to Gambone that he believed Duverne's actions were instituted with age animus.

33. Shortly thereafter Gambone addressed Suozzo's complaints with Duverne. Gambone instructed Duverne to cease his ageist comments, including about Suozzo's salary, his retirement, and his years of service, and to cease issuing unfounded disciplinary action.

34. Duverne never again mentioned the unfounded March, 2007 PIP he issued to Suozzo; it was as if the PIP was never issued.

35. The ninety (90) day period for performance under the PIP, if it were actually being implemented against Suozzo, would have concluded in June, 2007.

36. On July 1, 2007, Suozzo learned that he was for the first time in over thirty (30) years denied a pay increase made available by Massport.

37. Suozzo inquired with Freni about his denial of a pay raise. Freni informed Suozzo that Duverne instructed that Suozzo was not eligible for a pay raise due to his being on a PIP and thereby on probationary status.

38. Suozzo explained that Duverne had not mentioned the purported PIP to Suozzo in any manner over the past months, that he had certainly not followed any of Massport's policies and procedures with regard to issuing employees PIP's if it was intended to actually be implemented (as opposed to issued as mere harassment), and that in any case the ninety (90) day period was over prior to the denial of his pay raise.

39. Freni was visibly agitated to hear Suozzo's complaint and refused to take any action. Freni reiterated to Suozzo that he must stop complaining about his work environment.

40. Shortly thereafter Suozzo met with the Director of Governmental Affairs, Thomas Butler ("Butler"). During their meeting, Suozzo reiterated the discriminatory comments and adverse actions by Duverne throughout the past year. Butler promised to look into the matter.

41. Suozzo later learned from Butler that various administrators at Massport were aware that Duverne and not Suozzo was the problem and admitted that Massport had issues with Duverne.

42. On September 6, 2007, in an effort to take self-help measures, Suozzo applied for an open and available job, Operations Manager Field ("Air") Side. Said job was not supervised

by Duverne and was a relatively lateral transfer. Suozzo's then-current job and the job he applied for were both classified as Grade Level 8. Suozzo knew that he was qualified for the job because he had previously been assigned as the training supervisor for persons who were hired to fill it.

43. Despite that it is Massport's custom and practice to interview all qualified internal applicants for open and available positions, that Suozzo was obviously qualified for the position, and that Suozzo received notice from Massport that his application had been received and processed, Suozzo was not interviewed for the job. On information and belief, the individual hired for the position was substantially younger and less experienced than Suozzo.

44. A few weeks later, a similar job, Operations Manager Street Side, was posted as open and available. Suozzo, again being qualified for the job, submitted his application. When Suozzo followed up with Massport about his application, he was informed that he would not even be interviewed for this job either.

45. After not being considered in any manner for two (2) jobs he was obviously qualified to perform, Suozzo became concerned that he was being retaliating against for complaining about Duverne's discrimination.

46. On October 27, 2007, Suozzo attended an all day Logan Airport security and emergency drill. This work was performed on a Saturday and entitled Suozzo to overtime pay. When Suozzo thereafter submitted to Duverne payroll forms that included his overtime pay, Duverne attempted to deny Suozzo the overtime. Duverne finally allowed Suozzo the overtime pay after several days of harassment and only after Suozzo stated that he would report the denial to Freni and/or human resources. Duverne thereafter relented, but not before yelling and

screaming at Suozzo for taking the overtime and continuing his threats to sabotage Suozzo's employment.

47. In November, 2007, Suozzo learned from several coworkers in his department unit that Duverne made egregious derogatory comments about Suozzo and also stated that he intended to remove Suozzo from his job but that he desired to first lower Suozzo's salary. One co-worker informed Suozzo that the comments made by Duverne were so demeaning that she could not bring herself to repeat them to Suozzo.

48. Massport's retirement compensation is based upon a calculation of the retiring employee's highest consecutive three (3) years of wages (i.e. an employee's last three (3) years), years of credible service, and age at the time of retirement.

49. On information and belief, Duverne was fully aware of the manner in which Massport's retirement compensation is calculated, that Suozzo intended to retire in or around April, 2011, and that Suozzo was due to vest in a significant increase in his retirement compensation at that time.

50. Duverne was thereby fully aware that sabotaging Suozzo's employment, including by effectuating a reduction of his pay, ensuring he was denied earned pay increases, and/or ensuring Suozzo's termination prior to April, 2011, would ensure that Suozzo's retirement benefits would also be adversely affected.

51. Concerned that his complaints to his second level supervisor, Freni, and to the Director of Human Resources, Gambone, were not ceasing the discrimination he was enduring and that he was now being retaliated against, on or about December, 19, 2007, Suozzo met with Thomas Kinton ("Kinton"), the Executive Director of Massport.

52. Suozzo informed Kinton that Duverne repeatedly made derogatory age based comments about Suozzo directly to him as well as to his co-workers for the past over a year. Suozzo also informed Kinton that Duverne continued to take adverse actions against him intended to sabotage his employment, including issuing him unfounded warnings and performance evaluations, an unfounded PIP that was never acted on, and by for no reason denying him pay raises which would ultimately affect his retirement benefits.

53. Suozzo further reviewed his daily activity reports and action files with Kinton. The daily activity reports and action files show the actions Suozzo took and the duties he performed on a daily basis in the performance of his job.

54. Kinton informed Suozzo that he was angry that Duverne was continuing his conduct because he had previously instructed Freni and Gambone to cease Duverne's conduct and resolve Suozzo's workplace issues. Kinton also informed Suozzo that his job performance as detailed in his daily activity reports and action files was right on point. Kinton instructed Suozzo to continue his job performance in the same manner moving forward.

55. Shortly thereafter another job became open and available that Suozzo was qualified for and that would be a lateral transfer, Operations Manager Communications. Due to his not even being interviewed for the prior two (2) jobs he applied for, Suozzo approached the hiring supervisor and stated that he wanted to apply for the job. The hiring supervisor responded very positively, informing Suozzo to indeed do so and that he looked forward to their interview. Suozzo thereafter submitted his application. Sometime later Suozzo learned that interviews occurred and that he was yet again not even selected for an interview let alone meaningfully considered for the job.

56.     On information and belief, in retaliation for Suozzo complaining about the continuing discrimination and retaliation he was enduring by Duverne, Freni instructed that Suozzo not be interviewed for the three (3) jobs he applied for in 2007 and early 2008.

57.     In or around February, 2008, Gambone requested Suozzo to meet with him. During their meeting, Gambone informed Suozzo that Kinton addressed Suozzo's complaints with him and Freni.  Gambone further informed Suozzo that Duverne was issued a warning and directed to cease all derogatory comments about Suozzo, including about Suozzo's salary and retirement.  Gambone further instructed Suozzo to contact him immediately if Duverne continued his conduct in any manner moving forward.

58.     In May, 2008, during a meeting with Duverne concerning the results of a TSA compliance audit for access to restricted areas at Logan Airport, Duverne "blew up" at Suozzo. Duverne, standing inches from Suozzo's face screamed at him over and over again with increasing intensity: "you should leave [Massport's employ]. You don't have any balls. You're not a man. Stand up and admit you're not a man. You can't do your job any more…YOU'RE JUST TOO OLD!"

59.     Thereafter, Suozzo went to human resources and requested to speak with Gambone.  When Suozzo was informed that Gambone was unavailable he requested, per Gambone's prior instruction, that Gambone be informed that Suozzo needed to speak with him about a serious incident that occurred with Duverne.

60.     Gambone did not respond to Suozzo.  Instead, over a week later Harding contacted Suozzo.  When Suozzo relayed the incident to Harding she responded that she was

worried for Suozzo, that his work environment was clearly intolerable, and that she was concerned for his health and well being.

61. Suozzo again requested to meet with Gambone. Harding agreed to report the incident, their conversation, and Suozzo's request for a meeting to Gambone. Suozzo attempted to reach Gambone on at least three (3) occasions over the following month to no avail.

62. Meanwhile, in June, 2008, Duverne issued Suozzo another unfounded performance evaluation, provided him another unfounded warning, placed him on another unfounded PIP, and denied him another pay raise that was made available by Massport.

63. Unable to take Duverne's discrimination and retaliation any longer and receiving no meaningful assistance from Massport, on July 3, 2008, Suozzo filed a Complaint of discrimination and retaliation with the Massachusetts Attorney General's Office Civil Rights Division ("AG Complaint").

64. That same week, Gambone contacted Suozzo and requested to meet with him. Suozzo met with Gambone and reported Duverne's most recent discriminatory and retaliatory actions against him. Gambone apologized for not taking more drastic action earlier. Gambone also indicated that he would speak with Freni to ensure Suozzo received his pay raise and assist Suozzo in obtaining a job transfer out from under Duverne's supervision.

65. Thereafter and throughout July, 2008, Massport, by and through Gambone and Freni, repeatedly made efforts to force Suozzo to accept a substantially demoted position as the Manager of Dispatchers.

66. The position of Manager of Dispatchers is a position with significantly diminished material job responsibilities, significantly diminished prestige, and included a reduction in his Job Classification.

67. In Suozzo's position as Airport Security Compliance Manager, assigned a Grade Level 8, among many other duties and responsibilities, Suozzo supervised the Massport Airport Officers (a special Massachusetts State Police Unit assigned to Logan Airport), was responsible for substantial day to day security matters, and had the authority to investigate compliance issues, issue violations, seize employee badges and IDs, and to remove persons from the airport premises. Suozzo had an office, a Massport issued vehicle, and an administrative assistant.

68. The job duties and responsibilities of the Manager of Dispatchers, assigned a Grade Level 4, essentially consisted of answering phones and either directing persons calling to the correct department or dispatching the appropriate personnel to respond to situations as they arose. Suozzo would not have any real supervisory duties, no authority over security actions at the airport, no office, no Massport issued vehicle, nor an administrative assistant. To add insult to injury, Duverne would remain his supervisor.

69. Suozzo continuously refused to accept the substantially demoted position. At first, Gambone and Freni attempted to convince Suozzo the position was not a substantial demotion because they had received approval to continue Suozzo's pay at the same rate as in his current position. This was accomplished by renaming the job "Manager" instead of "Supervisor" and using the change in title to upgrade the position to a Grade Level 6. There was no change in the job duties or responsibilities.

70.     When Suozzo responded that receiving the same pay was only one aspect of the job and that the substantially diminished job duties, responsibilities, and prestige of the position, in addition to a downgrade in job classification from 8 to 6, showed that it was clearly a demotion, Freni threatened to terminate Suozzo if he did not agree to accept the substantial demotion.  Meanwhile, Gambone acknowledged that it would be a substantial demotion but continued to pressure Suozzo to take the demotion anyway.

71.     On July 22, 2008, Freni requested to meet with Suozzo.  During the meeting, Freni berated and yelled at Suozzo that he was tired of Suozzo causing problems, repeatedly complaining about his work environment, and refusing to accept the Manager of Dispatchers job.

72.     Suozzo responded by informing Freni that it was simply wrong for him, the victim of ongoing discrimination and retaliation, to be forced to accept a substantially demoted position while Duverne, the discriminator, was allowed to continue in his job as if nothing had occurred.  Suozzo repeated to Freni what Duverne said to Suozzo in May, 2008, that Suozzo was "too old," that he has "no balls," that he isn't "a man," and that he should "just leave Massport." While upon hearing this Freni stopped yelling, became visibly astonished, and uttered in an inquisitive manner "he said all of that to you[?]," Freni told Suozzo his only recourse at that point was to accept the Manager of Dispatchers job.

73.     On or about July 24, 2008, Suozzo filed his initial *pro se* Charge with the MCAD.  On information and belief, the Charge was issued by the MCAD and mailed to Gambone at Massport that same day.

74. On the morning of July 28, 2008, Gambone again attempted to force Suozzo to accept the Manager of Dispatchers job. When Suozzo repeated his refusal to accept an unfounded substantial demotion, Gambone again threatened to terminate him.

75. At the thought of further pressure to accept a substantial demotion or to be fired and in culmination of two (2) years of unlawful discrimination and retaliation during which Suozzo endured berating, humiliating, and degrading conduct by the defendants, Suozzo experienced overwhelming distress. He experienced an anxiety attack that was so severe it resembled in all manners a heart attack. He collapsed and was taken to the hospital in an ambulance. The hospital kept Suozzo overnight for observation and testing. Thereafter Suozzo's doctors instructed him to continue to remain out of work due to his mental and physical condition caused by his workplace.

76. Without more, on July 31, 2008, Suozzo received a letter from Gambone at home. The letter purported that Suozzo's job was eliminated. The letter further stated that as a result of the purported job elimination Suozzo could either accept a substantial demotion to the position of Manager of Dispatchers or receive a severance package and retire.

77. Prior to receiving the July 31, 2008 letter, no one made any mention whatsoever to Suozzo that his job was being eliminated. This is because Suozzo's job was not eliminated. The job title was merely changed from Airport Security Compliance Manager to Airport Security Operations Manager. The job title was changed to purport that Suozzo's job was eliminated for the sole purpose of forcing him out of his job.

78. The real reason for Suozzo's substantial demotion was discrimination based on age and/or retaliation for engaging in the protected activity of continuously reporting to the

defendants the discrimination he endured and for filing complaints of discrimination and retaliation with the Attorney General's Office and/or the MCAD.

79. Suozzo's doctors instructed him to remain out of work on a medically necessary leave from his severe attack at Massport on July 28, 2008 and continuing.

80. Through the remainder of 2008, 2009, and the first half of 2010, Suozzo remained out of work due to his doctors' refusal to allow him to return to Massport's workplace. Suozzo sought and received workers' compensation benefits during this time.

81. By the middle of 2010, Suozzo realized that he would never be capable of returning to Massport in the substantially demoted Manager of Dispatchers position without it continuing to exacerbate his health and wellbeing. As a result, Suozzo applied for retirement - one (1) year earlier than he intended which resulted in a decrease in his yearly retirement benefit entitlements. Notwithstanding, Suozzo's retirement benefits are less than they would have been had he not been subjected to discriminatory denials of pay raises in 2007 and 2008.

82. At all times relevant, Suozzo was ten (10) to twenty (20) years older than his co-workers who also reported directly to Duverne and was twenty (20) years older than Duverne.

83. Since Suozzo's substantial demotion that resulted in ridding Suozzo of Massport's workplace, Duverne has unjustifiably taken steps to terminate and/or terminated two (2) other older workers who reported to Duverne after Suozzo was gone, Dana Cook and Marilyn Rolfe. On information and belief, Cook is in his mid to late-fifties (50's) and Rolfe is in her sixties (60's).

84. Massport is strictly liable for the age discrimination and retaliation Suozzo endured by his direct supervisor, Duverne, and his second level supervisor, Freni. Duverne and

Freni are also individually liable for their unlawful conduct and/or for acquiescing in and abetting the continuation of such unlawful conduct.

85. The Defendants' discriminatory and retaliatory conduct has caused Suozzo substantial damages, including among other things, lost wages and emotional distress.

## COUNT I

### AGE DISCRIMINATION
### IN VIOLATION OF THE ADEA

86. The Defendants' conduct, as set forth above, constitutes violations of 29 U.S.C. § 623(a).

## COUNT II

### AGE DISCRIMINATION
### IN VIOLATION OF M.G.L. c. 151B

87. The Defendants' conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(1B).

## COUNT III

### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES
### IN VIOLATION OF THE ADEA

88. The Defendants' conduct, as set forth above, constitutes violations of 29 U.S.C. § 623(d).

## COUNT IV

## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES IN VIOLATION OF M.G.L. c. 151B

89. Defendants' conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(4).

## COUNT V

## INTERFERENCE WITH PROTECTED RIGHTS

90. Defendants' conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(4A).

## COUNT VI

## AIDING AND ABETTING IN VIOLATION OF M.G.L. c. 151B, §4 (5)

91. Freni's conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(5).

## PRAYER FOR RELIEF

WHEREFORE, Suozzo demands judgment against the Defendants and prays that this Honorable Court will enter the following relief:

1. A declaration that the Defendants discriminated against Suozzo based on his age, retaliated against Suozzo for engaging in protected activity, interfered with Suozzo's rights, and aided and abetted unlawful conduct in violation of the ADEA and M.G.L. Chapter 151B;

2. To award Suozzo lost wages and benefits;

3. To award Suozzo punitive damages;

4. To award Suozzo emotional distress damages;

5. To award Suozzo attorney fees, interest, and costs; and

6.   To grant Suozzo other such relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

    Respectfully submitted,
For the Plaintiff,
WILFRED SUOZZO
By his attorneys,

/s/ Tara M. Swartz

_____

Tara M. Swartz, BBO #652600
Rebecca G. Pontikes, BBO # 637157
PONTIKES & SWARTZ, LLC
77 Franklin Street, 3rd Floor
Boston, MA 02110
Tel. (617) 357-1888
Fax. (617) 357-1884

Dated: September 24, 2010   tswartz@psemploymentlaw.com